**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THEODORE J. COLLAS | |
| Plaintiff, | Civil Action No. 17-11866 (ES) (MAH) |
| v. | OPINION |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Wells Fargo Bank, N.A.'s ("Defendant's" or "Wells Fargo's") motion to dismiss the Complaint of Theodore J. Collas ("Plaintiff"). (D.E. No. 4). The Court has subject-matter jurisdiction under 28 U.S.C. § 1332. After considering the parties' submissions,[1] the Court reaches its decision without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court GRANTS Defendant's motion to dismiss.

**I.    Background**

The Court will "set out facts as they appear in the Complaint . . . ." *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

"On October 24, 2005, Plaintiff's mother, Phyllis Collas, executed a negotiable promissory note and a security interest in the form of a mortgage of $210,000 for her home with the original lender of the promissory note and mortgage lying in World Savings Bank . . . ." (D.E. No. 1 Ex.

---

[1]    (*See* D.E. No. 4-1, Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mov. Br."); D.E. No. 10, Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp. Br."); D.E. No. 11, Defendant's Reply Brief ("Def. Reply Br.")).

A, Complaint ("Compl.") ¶ 5). That home ("the property") is located in Livingston, New Jersey. (*See id.* ¶ 1). "Plaintiff took over the [property] upon his mother's death and began paying the monthly due payments . . . ." (*Id.* ¶ 6). And Plaintiff currently "has a mortgage on [the] property." (*See id.* ¶ 1). In 2008, Defendant "took ownership of the loan." (*Id.* ¶ 7). Plaintiff asserts that "[i]t is unknown exactly what has happened to the Mortgage and Note." (*Id.* ¶ 8). But he adds that the Note was "sold by World Savings Bank, FSB to a trust fund" and Defendant ultimately became "the underlying custodian of the Note." (*Id.* ¶¶ 8–9). The Mortgage, in contrast, "remains in the hands of World Savings Bank, FSB, based on the chain of title leading up to the present date . . . ." (*Id.* ¶ 16).

Plaintiff alleges that he "has attempted on countless occasions to apply for a loan modification with Wells Fargo, but they have refused to answer any such inquiries and/or applications;" and subsequently Defendant "brought a foreclosure action" in 2014 in state court. (*Id.* ¶¶ 10–11). "In early 2015, the Defendant was granted a default judgment against the Plaintiff for failure to plead or otherwise defend." (*Id.* ¶ 12). But because Defendant "was only in possession of the Note and not the Mortgage," Plaintiff submits that Defendant did not have the right to foreclose and "Defendant's foreclosure action should [have] be[en] barred, as it is a judgment based on fabrication and improper procedure." (*See id.* ¶ 17). The state court "reli[ed] upon the fact that Wells Fargo was the holder of both the Mortgage and the Note" and "entered a Final Judgment on January 8, 2015." (*Id.* ¶ 18).

As a result, on September 29, 2017, Plaintiff brought a seven-count complaint against Defendant in the Superior Court of New Jersey, Law Division, Essex County. (*See generally* Compl.). Plaintiff alleged violation of the Real Estate Settlement Procedures Act ("RESPA") (*id.* ¶¶ 19–24); breach of contract (*id.* ¶¶ 25–30); breach of good faith and fair dealing (*id.* ¶¶ 31–37);

fraud (*id.* ¶¶ 38–42); fraud under New Jersey Consumer Fraud Act (*id.* ¶¶ 43–48); promissory estoppel (*id.* ¶¶ 49–54); and negligence under the Home Affordable Modification Program (*id.* ¶¶ 55–61). On November 20, 2017, Defendant filed a notice of removal. (*See* D.E. No. 1 at 1–4). And on December 11, 2017, Defendant filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Def. Mov. Br. at 3–4).

In sum, Defendant contends in its moving brief that all of Plaintiff's claims "are barred by the Entire Controversy Doctrine, res judicata, and collateral estoppel;" and, "[i]n addition to being barred, Plaintiff's Complaint fails to state any claims." (Def. Mov. Br. at 1). Because the Court rules that all of Plaintiff's claims are barred by the entire controversy doctrine,[2] it need not address Defendant's other arguments.

**II.     Legal Standard**

**A.  Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." But in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows

---

[2]     A plaintiff "who ha[s] filed a previous suit in New Jersey state court [is] subject to the rigors of the entire controversy doctrine when [he] file[s] a second suit in New Jersey federal court . . . ." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 141 (3d Cir. 1999) (citing *Rycoline Prods. Inc., v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir.1997)). Here, "[t]he existence of the prior state action is not disputed." *See Santander Bank, N.A. v. Friedman, Schuman, Appelbaum, Nemeroff & McCaffery, P.C.*, No. 14-0413, 2014 WL 1621792, at *3 (D.N.J. Apr. 17, 2014); (*see, e.g.*, Compl. ¶ 11; Def. Mov. Br. at 1).

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

Pursuant to the pleading regime established by *Twombly* and *Iqbal*, the Court of Appeals for this Circuit has promulgated a three-pronged test of the sufficiency of a complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court considers "the elements a Plaintiff must plead to state a claim." *Id.* Second, the Court abstracts from mere legal conclusions contained in the complaint, which "are not entitled to an assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). That is, a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Finally, the Court considers the complaint's remaining well-pleaded factual allegations and "determine[s] whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 679). Throughout this process, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *See, e.g.*, *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 266 (3d Cir. 2016).

Notably, "the New Jersey Entire Controversy Doctrine is an affirmative defense. Thus, unless its elements appear on the face of the complaint, it is not a basis for dismissal under Rule 12(b)(6)." *Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *2 (D.N.J. Mar. 9, 2015) (citing *Rycoline*, 109 F.3d at 886; *see also Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) ("[A]n affirmative defense will serve as grounds for a Rule 12(b)(6) dismissal *only* if the basis for the defense is evident on the face of the complaint."). For the reasons described below, the Court rules

that the elements of the entire controversy doctrine defense appear on the face of the Complaint; and the defense bars all of Plaintiff's claims.

### III. Discussion

The Court rules, as a preliminary matter, that "the basis for the [entire controversy] defense is evident on the face of the [C]omplaint." *See Hankin*, 145 F. App'x at 771. As shown below, the Court need not and does not "rel[y] on facts from documents . . . not mentioned in, or attached to," the Complaint in order to rule that Plaintiff's claims are barred by the entire controversy doctrine. *See id.* at 771–72. In other words, the Court need not and does not consider "matters outside the face of the [C]omplaint." *See Youssef v. Dep't of Health & Senior Servs.*, 423 F. App'x 221, 224 (3d Cir. 2011). (This is not a case, for instance, in which the complaint "makes no reference to" the relevant previous state-court action. *See, e.g.*, *Bach v. McGinty*, No. 12-5853, 2015 WL 1383945, at *2 (D.N.J. Mar. 25, 2015).) Here, "[i]t is clear from the face of Plaintiff['s] Complaint that the claims asserted therein are germane [as described below] and could have been raised in the foreclosure proceeding." *See Guaba v. World Sav. Bank*, No. 14-2408, 2014 WL 6870995, at *2 (D.N.J. Dec. 3, 2014); *see also, e.g.*, *Bd. of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *21 (D.N.J. June 11, 2010) (ruling that a plaintiff "had an opportunity to present [his claims] . . . in the state court proceedings").

#### A. Legal Background and Plaintiff's Threshold Objections

"New Jersey's entire controversy doctrine 'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" *Shibles v. Bank of Am., N.A.*, 730 F.

App'x 103, 106 (3d Cir. 2018) (quoting *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015)). In federal court, New Jersey Rule of Court 4:30A, and the caselaw of New Jersey which interprets it, govern analysis of the entire controversy doctrine. *See, e.g.*, *Ricketti v. Barry*, 775 F.3d 611, 613–15 (3d Cir. 2015); *Rycoline*, 109 F.3d at 885–97.[3] New Jersey Rule of Court 4:30A provides: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by *R.* 4:64-5 (foreclosure actions) . . . ." New Jersey Rule of Court 4:64-5, in turn, provides that "[o]nly germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court." "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." *In re Mullarkey*, 536 F.3d 215, 229–30 (3d Cir. 2008) (quoting *Leisure Tech–Northeast v. Klingbeil Holding Co.*, 349 A.2d 96, 98–99 (N.J. Super. Ct. App. Div. 1975)). Accordingly, "[c]laims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011) (citing *Leisure Technology–Northeast*, 349 A.2d at 98). And such germane claims would be barred in subsequent lawsuits by the entire controversy doctrine. *See, e.g.*, id. at 472–73.

"Whether an issue is germane to the action should be construed liberally." *Mason v. US Bank*, No. 16-1366, 2016 WL 7189828, at *5 (D.N.J. Dec. 12, 2016). "Several types of claims,"

---

[3] The entire controversy doctrine is also reflected in the New Jersey State Constitution. *See Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011)

therefore, "have been found germane to New Jersey foreclosure actions . . . ." *Halabi v. Fed. Nat'l Mortg. Assoc.*, No. 17-1712, 2018 WL 706483, at *5 (D.N.J. Feb. 5, 2018). In general, "[c]laims or defenses that [go] to the validity of the mortgage, the amount due, or the right of [mortgagee] to foreclose" are germane. *Bembry v. Twp. of Mullica*, No. 17-3066, 2018 WL 4519957, at *2 (3d Cir. Sept. 20, 2018) (quoting *Delacruz v. Alfieri*, 145 A.3d 695, 708 (N.J. Super. Ct. App. Div. 2015)). For instance, a plaintiff's "claim that a loan modification had been implemented is a fundamental defense to Wells Fargo's right to foreclose," is germane, and would be later barred by the entire controversy doctrine. *See, e.g.*, *Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 435–37 (N.J. Super. Ct. App. Div. 2018). And "[c]laims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings" and would likewise be barred. *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 549 (D.N.J. 2017). Other examples of claims ruled to be germane to New Jersey foreclosure proceedings include "those challenging the circumstances surrounding origination of the loan, those challenging the validity of the loan itself, and those challenging the amount due on the mortgage." *Halabi*, 2018 WL 706483, at *5 (quoting *Lichtenstein v. Select Portfolio Servicing*, 2011 WL 1560673, at *3 (D.N.J. Apr. 25, 2011)).[4]

Before explaining why this doctrine bars all of Plaintiff's claims, the Court will address two apparent threshold objections that Plaintiff raises in response to Defendant's invocation of the entire controversy doctrine. First, Plaintiff asserts that his claims "could not have been raised in the earlier state court proceeding because Plaintiff's claims about Defendant's failure to properly

---

[4] Further examples include a claim that the foreclosing entity "breached the underlying agreement in relation to which the mortgage was executed," *see Leisure Technology*, 349 A.2d at 99; "claims [that] arose directly out of a reinstatement quote that was provided . . . as an alternative to a foreclosure sale," *see Coleman*, 446 F. App'x at 472; and a claim asserting that the foreclosing entity "failed to provide proper notice and otherwise acted inappropriately with regard to tax certificate," *see Bembry*, 2018 WL 4519957, at *2.

consider his modifications did not take place until after the Final Judgment was entered." (Pl. Opp. Br. at 9; *see also id.* at 2); *cf. Puche*, 256 F. Supp. 3d at 546 ("Plaintiffs argue that their claims cannot possibly have already been litigated in state court because they are based upon conduct that took place after judgment was issued in the state court proceedings."). But the face of the Complaint belies this assertion: Every claim alleges that Defendant "proceeded with litigation," i.e., the state-court foreclosure proceeding, *after and despite* Plaintiff's "applications for modifications." (*See, e.g.*, Compl ¶¶ 23, 28–29, 32–33, 39, 45–46, 50 & 59 ("Defendant turned to seeking a foreclosure action on the Plaintiffs home *prior to indicating acceptance or denial of a loan modification.*") (emphasis added)); *see also, e.g.*, *Puche*, 256 F. Supp. 3d at 546 ("Plaintiff['s] assertions that [his] claims are based on conduct that occurred after the state court entered its final judgment . . . are inaccurate and misleading.")). Plaintiff then "fail[ed] to plead or otherwise defend" during the foreclosure proceeding and, furthermore, offers no persuasive explanation regarding that failure. (*See id.* ¶ 12). It is "axiomatic" that Plaintiff cannot amend the Complaint with his brief in opposition to the instant motion to dismiss. *See, e.g.*, *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Accordingly, the Court must reject the assertion that "Defendant's failure to properly consider" loan modifications "did not take place until after the Final Judgment was entered." (*See* Pl. Opp. Br. at 9).

Second, Plaintiff asserts that "he was not an owner of the property during the earlier state foreclosure action." (*Id.*; *see also id.* at 3). Plaintiff cites "Defendant's Exhibit C" in support of this proposition, but he never alleged it in the Complaint, and has also argued that the Court should not consider the exhibits appended to Defendant's motion to dismiss. (*See id*. at 7). Indeed, Plaintiff apparently refers to Exhibit C as "an unverified print out from a website that provides tax

information." (*See id.*).  And, again, the Complaint belies Plaintiff's brief-based assertion.  (*See, e.g.*, Compl. ¶¶ 1 (Plaintiff has a mortgage on his property . . . ."), 6 ("Plaintiff took over the estate . . . .") & 46 (alleging that Defendant "sought to foreclose on *the Plaintiff's property*") (emphasis added)).  Accordingly, the Court does not consider Exhibit C and must reject the assertion that Plaintiff "was not an owner of the property during the earlier state foreclosure action." (*See* Pl. Opp. Br. at 9).

**B. All of Plaintiff's claims are barred by the entire controversy doctrine.**

Turning to application of the entire controversy doctrine, Plaintiff asserts that his claims "are not germane to the foreclosure" simply because "[i]n a foreclosure action, a lender need only prove the right to foreclose and the amount due on the mortgage." (*Id.* at 8).  But Plaintiff cites no legal authority for this purported legal rule (*see, e.g.*, *id.*); and, as the Court will now explain, it is apparently contradicted by the courts of New Jersey and precedent of the Court of Appeals.

"In the present case there can be no doubt that a single [entire] controversy is at issue." *See Okpor v. Rutgers, State Univ. of N.J.*, 196 F. App'x 129, 131 (3d Cir. 2006).  Plaintiff "could have raised all of the claims contained in his federal complaint . . . in his state court action.  All of these claims arise from the same set of facts." *Id.*; *see also Bembry*, 2018 WL 4519957, at *2 (ruling that the plaintiff "could have presented all of [his] claims and defenses in state court in the initial foreclosure action").

Most specifically, germane claims include "[c]laims that loan servicers violated their statutory duties under RESPA," Plaintiff's Count I.  *See Puche*, 256 F. Supp. 3d at 549.  Hence Plaintiff's "RESPA claim . . . could . . . have been raised" and must now be barred. *See Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *10 (D.N.J. May 12, 2016).  And more generally, as observed above, "[c]laims or defenses that [go] to . . . the right of [mortgagee] to

foreclose" must be raised in a previous foreclosure proceeding or they "[a]re barred" as germane under the entire controversy doctrine. *See Bembry*, 2018 WL 4519957, at *2 (quoting *Delacruz*, 145 A.3d at 708). Here, as a basis for his claims, Plaintiff asserts that Defendant "was only in possession of the Note and not the Mortgage" and thus Defendant's "foreclosure action should [have] be[en] barred" because it did not have the right to foreclose. (*See* Compl. ¶ 17). Accordingly, the entire controversy doctrine straightforwardly bars the instant claims. *See Bembry*, 2018 WL 4519957, at *2 (quoting *Delacruz*, 145 A.3d at 708).

As also observed above—and as an independent basis for dismissal under the entire controversy doctrine—germane claims are defined as those "arising out of the mortgage transaction which is the subject of the foreclosure action." *See Puche*, 256 F. Supp. 3d at 549 (quoting *Leisure Tech.*, 349 A.2d 96). Hence germane claims would include a claim pertaining to "loan modification," which a plaintiff seeks to raise as a "defense to Wells Fargo's right to foreclose." *See, e.g.*, *Adelman*, 179 A.3d at 435. Again, the Complaint explicitly recognizes that Defendant "brought a foreclosure action upon the Plaintiff in 2014." (Compl. ¶ 11). And with respect to each claim Plaintiff now brings, Plaintiff alleges that Defendant "proceeded with litigation," i.e., the state-court foreclosure proceeding, *after and despite* Plaintiff's "applications for modifications." (*See, e.g.*, Compl ¶¶ 23, 28–29, 32–33, 39, 45–46, 50 & 59 ("Defendant turned to seeking a foreclosure action on the Plaintiffs home *prior to indicating acceptance or denial of a loan modification*.") (emphasis added)); *see also, e.g.*, *Puche*, 256 F. Supp. 3d at 546 ("Plaintiff['s] assertions that [his] claims are based on conduct that occurred after the state court entered its final judgment . . . are inaccurate and misleading.") Moreover, Plaintiff several times explicitly references the direct connection between his instant claims and the foreclosure proceeding. (*See, e.g.*, Compl. ¶ 28 (alleging that Defendant "stated that it would not proceed with

litigation while Plaintiff's modification applications were pending")). "Because the loan modification issue should have been fully and timely litigated during the previous foreclosure proceedings," Plaintiff may not "rais[e] the issue in [this] independent lawsuit." *See Adelman*, 179 A.3d at 437.

In sum, Plaintiff had "a fair opportunity to litigate h[is] claims." *See Coleman*, 446 F. App'x at 473. But, without persuasive explanation in the Complaint, he missed that opportunity. (*See, e.g.*, Compl. ¶ 12). If "amending the Complaint could not overcome the entire controversy doctrine and would be futile," the Court would be required to grant dismissal with prejudice. *See Mason*, 2016 WL 7189828, at *6 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)); *Halabi*, 2018 WL 706483, at *6 ("Because . . . the deficiencies in Plaintiff's Complaint cannot be cured through amended pleadings the Court finds that any future amendment would be futile."). Here, however, Plaintiff has suggested in his opposition brief that his claims "could not have been raised in the earlier state court proceeding because Plaintiff's claims about Defendant's failure to properly consider his modifications did not take place until after the Final Judgment was entered" and that he "was not an owner of the property during the earlier state foreclosure action." (*See* Pl. Opp. Br. at 9). It is unclear how these propositions could square with the Complaint—which repeatedly alleges that Defendant "proceeded with litigation" *after* it "refused to properly consider and/or answer Plaintiffs modification applications" (*see, e.g.*, Compl. ¶ 23) and alleges that Defendant "sought to foreclose on *the Plaintiff's property*" (*see, e.g., id.* ¶ 46 (emphasis added))—but if they could square, amendment possibly would not be futile. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (suggesting that courts should use "strong liberality" when "considering whether to grant leave to amend").

## IV. Conclusion

For the foregoing reasons, then, the Court GRANTS Defendant's motion to dismiss *without prejudice*. **To the extent Plaintiff can cure the deficiencies identified in the Court's Opinion, Plaintiff may do so within thirty days in a *final*, amended complaint.** But "application for dismissal . . . may be made if a timely amendment is not forthcoming within that time." *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976) (per curiam)).[5] **And a failure to amend within thirty days or to cure the deficiencies identified in the Court's Opinion will result in a dismissal *with prejudice*.**

An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[5] If Plaintiff "does not desire to amend, he may file an appropriate notice . . . asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate." *Id.*